■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARDY R. BROWNELL, JR., Appellant.—Appeal by defendant from a judgment of the County Court, Dutchess County, rendered November 29, 1976, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. Defendant was charged with murder after the fatal shooting of his wife in their home in Pawling, New York, on March 14, 1976. Shortly after the shooting defendant telephoned his sister and a friend, explaining that there had been an accident and that his wife had been killed. Eventually, the police were called. When they arrived at the scene, they observed the wife's dead body on the kitchen floor. The defendant explained that "that was my wife Jean Brownell" and stated that she had been killed when his revolver went off accidentally. A Deputy Sheriff escorted the defendant to a patrol car parked outside of the house. The defendant's friend, who was also a town constable, was told to "cover" him. Several minutes later a police officer asked the defendant if he would accompany them to the Sheriff's office in Poughkeepsie. In Poughkeepsie, defendant was questioned by three police officers and an Assistant District Attorney. He recounted his version of his wife's accidental death, explaining that the gun had gone off when it hit the kitchen floor after falling from the refrigerator. He later modified the story, explaining that he had lunged for the falling gun and it had gone off while he grasped it with his right hand. After further questioning, he again changed his story, stating that he had caught the revolver with his left hand. In all, the interrogation lasted more than two hours. During that time, defendant's sister, who had learned that he was at the Sheriff's office, attempted to see him. After waiting for approximately an hour, she was told that she could not see him until the questioning was concluded. When the interrogation was completed, defendant was driven back to his home by a police detective, accompanied by another police officer and the Assistant District Attorney. At one point, defendant asked if he needed a lawyer and the Assistant District Attorney replied that he would have to get one if he were ever charged. At his house, the defendant assisted the policemen and Assistant District Attorney in re-enacting the accident as he had described it. He was not then arrested. At no time during that day was defendant given the *Miranda* warnings. Several days later, defendant was questioned by a State police investigator. With his attorney's permission, he again offered his explanation of his wife's death, repeating most of the details he had previously told the other officers. In the meanwhile, the police investigation revealed that the defendant was involved in an affair with one Charlene Tully and that he had told her that he would obtain a divorce from his wife by March 15, 1976. At the trial, the police officers and Assistant District Attorney testified to the statements defendant made to them on March 14, 1976. Ms. Tully recounted in detail her affair with the defendant and his promises to obtain a divorce. The

People also offered expert medical testimony to the effect that the shooting could not have occurred as the defendant described it. Defendant testified in his own behalf, repeating his contention that his wife had been killed accidentally. The jury returned a verdict of guilty. On appeal, defendant contends that the court erred in admitting into evidence statements which he made to law enforcement officials during the questioning of March 14, 1976. Assuming that to be so, but without passing on the issue, the error, if any, was harmless beyond a reasonable doubt. In most respects, his explanation of his wife's death was the same as the explanation which he offered the jury at the trial. Martuscello, J. P., Damiani, Shapiro and O'Connor, JJ., concur.